IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBIN RUSSELL, | ) | Civil No. 3:10-cv-06278-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Richard F. McGinty
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309

      Attorney for Plaintiff

Dwight C. Holton, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Benjamin J. Groebner
Special Asst. U.S. Attorney
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Robin Russell bring this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Insurance Benefits under the Social Security Act (the Act). Plaintiff seeks an Order reversing the decision of the Commissioner and remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff asks that the case be remanded to the Agency for further proceedings.

For the reasons set out below, the Commissioner's decision should be reversed and the action should be remanded for further proceedings.


## **Procedural Background**

Plaintiff filed a claim for Disability Insurance Benefits on May 24, 2006, alleging that she had been disabled since January 15, 2006, because of Post Traumatic Stress Disorder (PTSD), depression, bone infection, and dyslexia. Plaintiff's application was denied initially on June 23, 2006, and upon reconsideration on December 19, 2006.

Based upon Plaintiff's timely request, a hearing was held before Administrative Law Judge (ALJ) John Madden, Jr. on June 11, 2009. Plaintiff and Francene Greers, a Vocational Expert (VE), testified at the hearing.


FINDINGS AND RECOMMENDATION - 2

In a decision filed on June 22, 2009, ALJ Madden, Jr. found that Plaintiff was not disabled within the meaning of the Act.  Plaintiff sought review of that decision by the Appeals Council.  On September 23, 2009, while her request for review of the ALJ's decision was pending, Plaintiff submitted a post-hearing evaluation performed by John Cochran, PhD.  The Appeals Council found that this additional evidence did not provide a basis for altering the ALJ's decision, and denied Plaintiff's request for review on August 13, 2010.  Upon that denial, the ALJ's decision became the final decision of the Commissioner.  In the present action, Plaintiff seeks judicial review of that decision.

## Factual Background

Plaintiff was born on July 16, 1955, and was 53 years old at the time of the hearing before the ALJ.  Plaintiff completed high school and obtained a certificate of clerical studies from a community college.  She has past relevant work experience as an office assistant, a janitorial worker, a belt line inspector in a nut processing facility, and a cleaner.  She has not worked since she developed an infection from a cat bite in December, 2005.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the

Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.


**Medical Record**

Plaintiff alleges that she is disabled primarily by psychiatric conditions, and her assertion that the Commissioner's decision should be reversed is based upon evaluations performed by David Sweet, PhD., and John Cochran, PhD, and an assessment made by a Polk County Mental Health Counselor. Therefore, my summary of the medical record here will be limited to those sources.

The Polk County Mental Health assessment was based on an interview with Plaintiff conducted on March 1, 2006. Plaintiff was diagnosed with Major Depressive Disorder, Recurrent, Moderate, with Psychotic Features, and PTSD. Her highest Global Assessment of Functioning (GAF) score during the previous year was rated at 50.

At the request of the Agency, Plaintiff was examined by Dr. Sweet, a psychologist, on June 14, 2006. Dr. Sweet diagnosed Major Depression; Recurrent, Severe, with Psychotic Features, and Borderline Intellectual Functioning. He rated Plaintiff's GAF score at 43. Dr. Sweet opined that Plaintiff's problem solving ability was likely limited, and that Plaintiff would be expected to have difficulty persisting at tasks, concentrating, and paying attention. He opined

that Plaintiff would likely "need some assistance with her financial matters" and would not be capable of handling any funds that might be awarded by the Agency.

At the request of Plaintiff's counsel, on September 12, 2009, Dr. Cochran, a psychologist, carried out a  psychological and cognitive evaluation.  Counsel asked Dr. Cochran "to determine any mental impairments that may affect the ability to obtain and maintain employment."  Dr. Cochran conducted a structured clinical interview and administered the following tests: Test of Memory Malingering (TOMM); Wechsler Adult Intelligence Scale, Revised (WAIS-R); Minnesota Multiphasic Personality Inventory-2 (MMPI-2); Neurobehavioral Cognitive Screening Examination (NCSE); and Millon Clinical Multiaxial-II,

Dr. Cochran diagnosed Major Depressive Disorder, Recurrent, Severe, Without Psychotic Features; Somatoform Disorder; Generalized Anxiety Disorder; PTSD, Chronic; Dysthymic Disorder; Personality Disorder NOS with dependent, schizoid, and avoidant features; and Borderline Intelligence.  He reported that Plaintiff's medical conditions included Diabetes Type 2, hypertension, poor appetite, chronic joint pain, and migraines.  Dr. Cochran  found that Plaintiff was severely limited in her ability to understand, remember, and carry out detailed instructions, and that she had moderately severe limitations in her ability to complete a normal workday without interruptions from psychologically based symptoms, complete a normal workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and accept instructions and respond appropriately to criticism from supervisors.  For the purposes of Dr. Cochran's evaluation, "Severe" was defined as being unable to perform the designated task or function.  "Moderately severe" was defined as causing "noticeable difficulty," which was further defined as being distracted from a job activity more than 20% of the workday or workweek.

FINDINGS AND RECOMMENDATION - 6

Dr. Cochran found that Plaintiff was moderately limited in a number of other areas, including the ability to maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, maintain socially appropriate behavior, and respond appropriately to changes in the work setting. A "moderate" limitation was defined as being able to perform a designated task or function, but having "noticeable difficulty," which was further defined as being distracted from a job activity from 11-20% of the work day or work week. He indicated that testing showed that Plaintiff had "a moderate tendency toward self-deception and a consequent exaggeration of current problems," but opined that her record "appears to be valid and interpretable." Dr. Cochran reported that testing did not show malingering. He rated her GAF at 50.

The Appeals Council considered Dr. Cochran's report, but concluded that it did not provide a basis for altering the ALJ's decision.

## Hearing Testimony

### Plaintiff's Testimony

Plaintiff testified as follows at the hearing before the ALJ.

Plaintiff "resigned" from her last job after being bitten by her cat on December 24, 2005. At the time of the hearing, she was being paid by a State agency for 20 hours of work per month assisting her father. Her duties included housekeeping, cooking and providing transportation to appointments.

Plaintiff was taking Glucophage, Glucorol, Zoloft, and Clemerpro at the time of the hearing. She did some reading, but had largely given up her hobbies because of back pain and

FINDINGS AND RECOMMENDATION - 7

joint pain.  Strong antibiotics she had taken to combat a bone infection caused by the cat bite had "created chronic joint pain."  Plaintiff could not identify any doctor who had told her that antibiotics had caused this problem.  The cat bite had resulted in the loss of the tip of the bone on Plaintiff's left index finger, and Plaintiff continued to experience sharp pain in that finger.  Grasping objects exacerbated the pain, and because of pain and difficulty holding objects, Plaintiff took a half day to wash dishes.  When Plaintiff performed activities such as vacuuming, she needed to rest for 30 minutes after 10 minutes of work.

Bone spurs in both of Plaintiff's feet made walking difficult and painful, and she sometimes used a walker or "mobility scooter" that belonged to her father.

Plaintiff thought that chronic joint pain and difficulty sleeping were her biggest impediments to working.  Depression was also a significant problem: On at least 7 days per month, Plaintiff could not "get out of bed, get dressed, [and] deal with people."

**Testimony of Vocational Expert**

The ALJ posed a vocational hypothetical describing a 53 year old individual with Plaintiff's education, who could perform a limited range of light work.  The individual could lift 20 pounds occasionally and 10 pounds frequently, stand and walk 6 hours during an 8-hour work day, sit for 6 hours during an 8-hour work day, push and pull the weights set out above, and could only occasionally climb ropes, ladders, and scaffolds.  The individual could remember short, simple instructions and procedures, and could remember multi-step instructions if they were simple.

The VE testified that the individual described could perform Plaintiff's past relevant work as a belt inspector, but could not perform any of Plaintiff's other past relevant work.

FINDINGS AND RECOMMENDATION - 8

The ALJ asked the VE to assume that the limitations he described would preclude performance of any of Plaintiff's past relevant work, and asked if the individual described could perform any other jobs that existed in substantial numbers in the national economy. The VE responded that the individual described could work as a laundry sorter, folding machine operator, or cleaner.

In response to further questioning by the ALJ, the VE testified that an individual who could not attend work on three or four days a month could not sustain competitive employment.

In response to questioning by Plaintiff's counsel, the VE testified that an individual who needed to rest for 15 to 30 minutes after working for 15 to 20 minutes, or who could only occasionally persist on tasks or pay attention, could not sustain competitive employment. The VE further testified that an individual who could only frequently persist on tasks and pay attention could not sustain employment as a laundry sorter, folding machine operator, or cleaner.

**ALJ's Decision**

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2006, the date of Plaintiff's alleged onset of disability.

At the second step, the ALJ found that Plaintiff's severe impairments included left index finger osteomyelitis, diabetes mellitus, major depressive disorder, and borderline intellectual functioning.

At the third step of his analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the "listings," 20 C.F.R. Part 404, Subpart P, App. 1.

FINDINGS AND RECOMMENDATION - 9

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  The ALJ found that Plaintiff could perform "light" work as defined in 20 C.F.R. § 404.1567(b), except that she was limited to occasional climbing of ladders, ropes, and scaffolds, could only remember short, simple instructions, and could only perform one to three step tasks.

In assessing Plaintiff's credibility, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with his evaluation of her residual functional capacity.

At the fourth step, based upon the VE's hearing testimony, the ALJ found that Plaintiff could perform her past relevant work as a belt inspector.

Though his conclusion that Plaintiff could perform her past relevant work made it unnecessary to reach this issue, the ALJ also found that Plaintiff could perform "other work" that existed in substantial numbers in the national economy.   The ALJ found that Plaintiff could work as a laundry sorter, folding machine operator, or cleaner.  Accordingly, he found that Plaintiff was not disabled within the meaning of the Act.


**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the Commissioner's decision should be reversed because the ALJ failed to properly evaluate the medical evidence and the Appeals Council erred in finding that Dr. Cochran's evaluation "does not provide a basis for changing the Administrative Law Judge's decision."  Plaintiff argues that the Appeals Council erred in failing to credit Dr. Cochran's opinions, which would have added several severe impairments to those assessed by the ALJ, and asserts that the decision that the Appeals Council affirmed was not supported by substantial evidence because those impairments were omitted.  She also asserts that the ALJ's decision is erroneous because the ALJ failed to "properly assess the evidence from Dr. Sweet."  Plaintiff contends that Dr. Sweet's opinion was uncontradicted, and that the reasons that the ALJ provided for its rejection would have been insufficient even if it had not been.  She also contends that the ALJ erred in failing to credit the opinion of a "Polk County Counselor" who assigned Plaintiff a GAF of 50.

FINDINGS AND RECOMMENDATION - 11

Plaintiff further contends that the Commissioner's decision is flawed because it is based upon an assessment of her residual functional capacity that did not reflect the severity of mental impairments assessed by Dr. Cochran.

1. **Evidence Submitted Following ALJ's Decision Denying Plaintiff's Claim**

Whether this court should consider Dr. Cochran's assessment is a critical issue in determining the appropriate disposition of this case.  As noted above, Dr. Cochran performed his evaluation after the ALJ had issued his decision, and while Plaintiff's request for review was pending before the Appeals Council.  The ALJ of course did not have the opportunity to consider Dr. Cochran's assessment, and the Appeals Council concluded that his report "does not provide a basis for changing the Administrative Law Judge's decision."

The Commissioner contends that opinions solicited after an ALJ has issued a decision are "typically" found not to be persuasive.  He also contends that Plaintiff has not shown good cause for failing to submit Dr. Cochran's opinion "to the ALJ for consideration."  The  Commissioner further argues that Dr. Cochran's opinion is not inconsistent with the ALJ's findings, and would not have "changed the outcome" even if it had been submitted for the ALJ's consideration.

The Commissioner cites Weetman v. Sullivan, 877 F.2d 20 (9th Cir. 1989), in support of his assertion that opinions solicited after an ALJ has issued a decision are not typically persuasive.  There, the court observed that a medical opinion submitted by the plaintiff was "all the less persuasive" because it had been obtained "only after the ALJ issued an adverse determination."  Id. at 23.

The question here is not whether opinions submitted  after the ALJ has filed a decision are "typically" unpersuasive.  Instead, the question is whether, in this particular case, the court

FINDINGS AND RECOMMENDATION - 12

should consider the "new evidence" that Plaintiff submitted to the Appeals Council following the ALJ's decision.

Analysis of this issue begins with two provisions of 42 U.S.C. § 405(g).  The first of these provides that only final agency decisions are subject to judicial review.  The second relevant provision states that a court may order that an action be remanded to the Agency for further proceedings "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

New evidence is "material" if there is a "reasonable possibility" that it would have altered the outcome.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001).  Dr. Cochran's assessment satisfies that requirement.  Dr. Cochran diagnosed Plaintiff with significant mental impairments not diagnosed by other medical sources, including a Somatoform disorder that could have affected the ALJ's evaluation of Plaintiff's credibility.  His testing provided objective support for Dr. Sweet's assessment of Plaintiff's mental functioning, which the ALJ had rejected in part because it was not based upon intelligence testing.  Dr. Cochran's assessment also supported the Polk County Counselor's opinion as to the severity of Plaintiff's impairments, which the ALJ had rejected in part because it was based upon Plaintiff's "subjective reports."  Given that Dr. Cochran reached similar conclusions after substantial testing, the ALJ might have viewed the Counselor's assessment differently if he had had the opportunity to consider Dr. Cochran's report.

Where, as here, the Appeals Council has considered new material submitted to it after the ALJ has issued a decision, the Ninth Circuit has generally concluded that courts may consider the new evidence without a showing of "good cause" for the failure to provide it to the ALJ.

See, e.g., Vasquez v. Astrue, 572 F.3d 586 n.7 (9th Cir. 2009) (evidence considered by Appeals Council is part of administrative record, subject to judicial review); Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n. 2 (9th Cir. 2007) (court may consider new evidence presented to Appeals Council); Harman, 211 F.3d at 1180 (court may consider additional material because it was examined by Appeals Council in determining whether to grant request for review); Ramirez v. Shalala, 8 F.3d 1449, 1451 (9th Cir. 1993).  Under the guidance of these decisions, I conclude that this court should consider Dr. Cochran's post-hearing assessment in evaluating Plaintiff's challenge to the denial of her application for benefits.

In her opening memorandum, Plaintiff contends that the "Appeals Council erred in not fully crediting" Dr. Cochran's opinion.  She further contends that this error, and the ALJ's own errors, "deprive the ALJ's decision of the support of substantial evidence and warrant a remand to the Commissioner for immediate payment of benefits."  These arguments fail for two reasons. First, where, as here, the Appeals Council denies a claimant's request for review, the ALJ's decision, not the decision of the Appeals Council, is the "final decision" that is subject to review. E.g., Batson v. Commissioner, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004).  Accordingly, any purported "error" by the Appeals Council is not subject to this court's review.  Second, it is not proper to remand an action for an award of benefits based upon "evidence that the ALJ has had no opportunity to evaluate . . . ."  Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000).

As discussed above, Dr. Cochran's report was "material" because an ALJ considering that evidence might have reached a different conclusion as to Plaintiff's application for benefits. Remand to the Agency for further proceedings is appropriate because an ALJ has not had the opportunity to evaluate this evidence.

2. **ALJ's Assessment of Other Evidence in Medical Record**

As noted above, Plaintiff also contends that the ALJ failed to "properly assess the evidence from Dr. Sweet" and erred in failing to credit the opinion of a "Polk County Counselor" who rated her GAF at 50. Plaintiff contends that Dr. Sweet's opinion was uncontradicted, and argues that the reasons that the ALJ provided for its rejection would have been insufficient even if it had not been.

**Dr. Sweet**

As noted above, Dr. Sweet diagnosed Major Depression; Recurrent, Severe, with Psychotic Features and Borderline Intellectual Functioning, and rated Plaintiff's GAF score at 43. Dr. Sweet opined that Plaintiff's problem solving ability was likely to be limited, and that she would be expected to have difficulty persisting at tasks, concentrating, and paying attention. He also opined that she would likely "need some assistance with her financial matters," and would not be capable of handling any funds that might be awarded by the Agency.

Though the ALJ included the Borderline Intellectual Functioning that Dr. Sweet had diagnosed as one of Plaintiff's severe impairments, he "gave little weight" to Dr. Sweet's opinion as to the severity of Plaintiff's impairments. He "accepted and adopted" the non-examining state agency psychological consultants' determination that Plaintiff could perform "short, simple, one to three step tasks" as an "adequate accommodation" of Plaintiff's mental impairments.

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must support the rejection of an examining physician's opinion that is

contradicted by another physician with specific and legitimate reasons that are supported by substantial evidence in the record.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

I have found no opinions of treating or examining physicians in the medical record directly contradicting Dr. Sweet's opinion as to the severity of Plaintiff's mental impairments.  Because the opinions of non-examining state agency consulting psychologists did not constitute substantial evidence supporting rejection of Dr. Sweet's opinion, the ALJ was required to provide clear and convincing reasons for its rejection.

The ALJ observed that Dr. Sweet's assessment of Plaintiff's overall mental functioning was not consistent with the record.  He noted that Dr. Sweet did not administer any intelligence testing.  He also correctly observed that Plaintiff had not taken special education classes, and had obtained a "regular" high school diploma, had completed clerical course work, and had "a history of past semi-skilled administrative work."  The ALJ asserted that records which demonstrated "numerous instances of exaggeration and poor effort on the claimant's part" had not been available for Dr. Sweet's review.  The ALJ asserted that Plaintiff's description of her activities of daily living, which included caring for her father, was inconsistent with her "presentations" to both Dr. Sweet and the "county counselor," and that the record showed that Plaintiff enjoyed "various outdoor and hobby activities."

In the absence of Dr. Cochran's assessment, the ALJ's reasons for rejecting Dr. Sweet's opinion may have been sufficient.   However, I need not and do not reach that question, because an ALJ who had the opportunity to review Dr. Cochran's report may have reached a different

FINDINGS AND RECOMMENDATION - 16

conclusion.  Therefore, on remand, the ALJ should be directed to re-evaluate Dr. Sweet's

opinion in light of the additional evidence provided by Dr. Cochran.

**Polk County Counselor**

The Polk County counselor who assigned Plaintiff a GAF score of 50 is not an

"acceptable medical source," but instead is considered an "other source" under relevant

regulations.  20 C.F.R. §§ 404.1513(a); 404.1513(d); SSR 06-03p.  ALJs must consider opinions

from "other" sources, and must provide a "germane reason" for their rejection.  Turner v.

Commissioner of Social Security, 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ supported his rejection of the counselor's opinion by noting that Plaintiff did

not have a prior treating relationship with this individual.  The ALJ also noted that the Polk

County counselor had not had an opportunity to review Plaintiff's record before assessing

Plaintiff's GAF score, and based the assessment in part on Plaintiff's "subjective reports"

concerning complications from the cat bite which were not supported by the record.

In the absence of Dr. Cochran's assessment, the ALJ's reasons for rejecting the

Counselor's conclusions may have satisfied the requirement that "germane" reasons support

rejection of this "other source" evidence.  However, as with Dr. Sweet, an ALJ who had the

opportunity to review Dr. Cochran's assessment may have viewed the evidence provided by the

Counselor differently.  Therefore, on remand, the ALJ should be instructed to reconsider

evidence from the Polk County Counselor in light of Dr. Cochran's report.


3. **ALJ's RFC Assessment**

Plaintiff contends that the Commissioner's decision is flawed because it is based upon an

assessment of her residual functional capacity that did not reflect the severity of mental

impairments assessed by Dr. Cochran.  On remand, the ALJ should be instructed to determine whether the original assessment of Plaintiff's RFC should be altered in light of that evidence.

4. **Plaintiff's Credibility**

Though Plaintiff has not explicitly challenged the ALJ's determination that she was not wholly credible, she has noted that Dr. Cochran's diagnosis of a Somatoform disorder could effect evaluation of her testimony.  I agree that an ALJ who credited Dr. Cochran's opinion might view Plaintiff's testimony concerning the severity of her symptoms and impairments differently.  Accordingly, on remand, the ALJ should be instructed to consider whether the original credibility determination should be altered in light of Dr. Cochran's assessment.

## Conclusion

A judgment should be entered REVERSING the decision of the Commissioner and REMANDING this action to the Agency for further proceedings.  The judgment should provide that, on remand, an ALJ will be instructed to consider whether the decision denying Plaintiff's disability claim should be altered in light of Dr. Cochran's post-hearing assessment.  The judgment should specifically require that the ALJ be instructed to reconsider evidence from Dr. Sweet and the Polk County Counselor, and to reexamine Plaintiff's RFC and credibility after considering Dr. Cochran's report.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due April 23, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION - 18

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 5th day April, 2012.


 /s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge